UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(SOUTHERN DIVISION)

| | |
|---|---|
| YURI TORRES GONZALES, et al., <br><br> Plaintiffs, <br><br> v. <br><br> PRESTIGE MAINTENANCE USA, LTD., et al, <br><br> Defendants. | Case No.: 8:07-CV-01949-PJM |

**MEMORANDUM IN SUPPORT OF JOINT MOTION
FOR FINAL APPROVAL OF SETTLEMENT AGREEMENT, FINAL JUDGMENT,
STIPULATION OF DISMISSAL WITH PREJUDICE,
AND WITHDRAWAL OF CERTIFICATION REQUEST**

Defendant Prestige Maintenance USA, Ltd. ("Prestige"), defendant Target Corporation ("Target"), and Plaintiffs jointly request that this Court enter the proposed Order of Final Approval of the Settlement Agreement, Final Judgment, Dismissal with Prejudice, and withdrawal of the certification request to the Court of Appeals of Maryland. In support of this motion, the parties state as follows:

**I.   PROCEDURAL BACKGROUND**

   **A.   Regional Notice**

On July 20, 2007, sixteen current and former Prestige employees ("Named Plaintiffs") filed a collective action for failure to pay overtime wages in violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"). They also brought Rule 23 class action claims asserting violations of the Maryland Wage and Hour Law, Md. Code Ann. Lab. & Empl. § 3-401 *et seq.*, and the Maryland Wage Payment Collection Law, Md. Code Ann. Lab. & Empl. § 3-507.1.

On February 25, 2008, the Court certified a regional FLSA collective action and authorized the distribution of notice to all current and former Prestige employees assigned to Target stores in Maryland and Virginia during three years prior to the filing of the Complaint. Following distribution of notice to approximately 475 current and former Prestige employees in Maryland and Virginia, 11 additional employees filed consents to join the lawsuit ("Existing Opt-In Plaintiffs").

### B. National Notice

On March 9, 2009, following extensive negotiations, the parties entered into a formal Settlement Agreement, the final copy of which is attached hereto as Exhibit 1.[1]  On April 10, 2009, the parties filed a Joint Motion for Preliminary Approval of the Settlement Agreement. Docket No. 103.  On May 21, 2009, following a fairness hearing, the Court entered a Preliminary Approval Order concluding that the Agreement was "fair, reasonable, and adequate in all respects to all Plaintiffs" in this Action.  Docket No. 109.  ¶ 19.

For purposes of settlement, the Court conditionally certified for collective action any wage claims against Prestige by hourly Prestige employees assigned to perform maintenance services at Target stores in the United States at any point during the period March 9, 2006 to June 1, 2008 ("National Collective Action").  Docket No. 109 ¶ 3.  The Court ordered Rust Consulting, Inc. ("Settlement Administrator") to mail notice to all members of the National Collective Action identified in the Settlement Agreement. *Id.* at ¶ 8.  On June 2, 2009, the Settlement Administrator distributed notice via first class mail to all 7,221 members of the

---

[1] Exhibits A through E of the Settlement Agreement were filed with the Court on April 10, 2009 (Docket No. 103) and will not be re-filed herewith.

National Collective Action. Exhibit 2 (Declaration of Jonathan Paul With Respect To Notification) ¶ 7.

The Court also required Plaintiffs' counsel to identify through CASA of Maryland up to two Hispanic-rights organizations in each of the 24 states in which potential class members had been identified, and to distribute notice to those organizations with a request that they make the notice available to potential class members in their locale. Docket No. 103 ¶ 8. Plaintiffs' counsel complied with this order.

As required by the Preliminary Approval Order, the Settlement Administrator advised members of the National Collective Action that their opt-in consent forms had to be post-marked on or before July 17, 2009 (forty-five calendar days after the initial mailing). Docket No. 109 ¶ 9; Exh. 2 ¶ 7.

### C. Additional Attempts To Provide Notice

The Settlement Administrator received 69 returned notices with forwarding addresses. Exh. 2 ¶ 9. Although not required to do so by the Settlement Agreement, counsel for Prestige directed the Settlement Administrator to resend notices to these forwarding addresses. *Id.*

Seven members of the National Collective Action did not receive notice and contacted Plaintiffs' counsel by telephone to provide updated contact information. Another member of the National Collective Action who did not receive notice contacted the Settlement Administrator directly to provide updated contact information. Exh. 2 ¶ 12. The Settlement Administrator promptly re-mailed notice to all 8 of these individuals. *Id.* Several other individuals contacted Plaintiffs' counsel or the Settlement Administrator to request notice, but they were not on the Court-approved list of National Collective Action members and thus did not receive notice. *Id.*

The Settlement Administrator has indicated that 3,471 notices were returned as undeliverable without a forwarding address. Exh. 2 ¶ 8. The parties submit that this number is reasonable under the circumstances because (1) the parties did not rely exclusively on Prestige's contact information to notify potential class members, but also attempted to contact potential class members through local Hispanic-rights organizations; (2) the National Collective Action included a number of former employees for whom Prestige did not have current contact information; and (3) no individual will forfeit claims as a result of non-participation in the settlement.

## II.   ADDITIONAL OPT-IN PLAINTIFFS

The Settlement Administrator received 147 opt-in consent forms from members of the National Collective Action. Exh. 2 ¶ 10, 10(h). However, not all consent forms complied with the terms of the Preliminary Approval Order, which states, "No Opt-In Consent Form shall be valid unless it is fully complete and mailed to the Administrator on or before the close of the Notice Period (that is, with a post mark on or before the forth-fifth (45th) calendar day following the agreed mailing date). No Opt-In Consent Form shall be deemed to be fully complete unless it contains (A) the name of a member of the National Collective Action; (B) a valid corresponding Prestige employee number or social security number; (C) an address; and (D) a signature." Docket No. 109 ¶ 9.

The opt-in forms received by the Settlement Administrator fall into the following categories:

(a)   The Settlement Administrator received 121 timely, complete forms under the terms of the Preliminary Approval Order. Exh. 2 ¶ 10(a), Attach. A.

(b)   The Settlement Administrator received 8 forms that were post-marked after the

July 17, 2009 deadline. Exh. 2 ¶ 10(b), Attach. B. Although these forms technically are invalid under the terms of the Preliminary Approval Order, Prestige has agreed to accept them as a measure of good faith.

    (c)    One individual, Jill Lupercio, hand-printed her name on the form but did not separately sign it. Exh. 2 ¶ 10(c), Attach. C. Although this form technically is invalid under the terms of the Preliminary Approval Order, Prestige has agreed to accept it as a measure of good faith.

    (d)    The Settlement Administrator received 8 forms with employee identification or social security numbers that did not match the identification numbers of any current or former Prestige employees. Exh. 2 ¶ 10(d), Attach. D. Identification numbers are important to this process because they allow the parties to sort out potential opt-in plaintiffs with similar names and to verify that the forms were submitted by bona fide class members. The notice allowed opt-in plaintiffs to identify themselves using either an employee identification or a social security number so that no individual would be required to provide a social security number as a condition to participating in the settlement. Prestige investigated each "mismatched" claim form to verify that no Prestige employee had ever worked under the number provided. The eight individuals listed in Exhibit 2-D failed to provide proper employee identification numbers, and thus their forms are invalid under the terms of the Preliminary Approval Order.

    (e)    Five individuals failed to provide *any* employee identification or social security numbers on their opt-in forms. Exh. 2 ¶ 10(e), Attach. E. Accordingly, these forms are incomplete and invalid under the terms of the Preliminary Approval Order.

    (f)    Three members of the National Collective Action submitted duplicate forms. Exh. 2 ¶ 10(h), Attach. F.

(g) The Settlement Administrator received one claim form indicating that the intended recipient, Robert Adair, had joined the military. The Settlement Administrator promptly requested updated contact information for this individual, but has not received a response. Exh. 2 ¶ 10(g). Even at this late date, Prestige would not oppose this individual's participation in the settlement if he were to return a completed, valid form. With the exception of Robert Adair, the parties have agreed not to accept any additional opt-in forms received after August 14, 2009.

Thus, the parties have agreed to accept the 130 Additional Opt-In Plaintiffs identified in paragraphs (a), (b), and (c) above.

### III. PAYMENTS AND RELEASES

In accordance with the Preliminary Approval Order, the parties have determined the participation payment amounts to be paid to the Named Plaintiffs and have calculated the back wage payment amounts to be paid to the Named Plaintiffs, Existing Opt-In Plaintiffs, and Additional Opt-In Plaintiffs (collectively, "Plaintiffs"). Exh. 1-F, 1-G, 1-H. Prestige has instructed the Settlement Administrator to establish a Qualified Settlement Fund ("QSF") for the purpose of distributing all required payments to Plaintiffs and their attorneys. Exh. 2 ¶ 11.

By its terms, the Settlement Agreement is contingent upon final approval by the Court and entry of a Final Order dismissing the Action with prejudice. Within two weeks after entry of the Final Order, Prestige will make a direct payment of $25,000 to CASA of Maryland and will fully fund the obligations of the QSF. Within thirty days after funding, the QSF shall distribute all required payments to Plaintiffs and their attorneys.

The parties acknowledge and agree that, upon entry of the Final Order, they shall be deemed to have released and forever discharged the other parties from each and every claim

released in Section 7 of the Settlement Agreement, and forever shall be enjoined and barred, to the fullest extent allowed by law, from asserting, instituting, or prosecuting, in any capacity, before any court or governmental agency, any Action or proceeding that involves or asserts any claim released pursuant to Section 7 of the Settlement Agreement. The parties intend that, upon entry of the Final Order, all such claims shall be extinguished, discharged, satisfied, and made unenforceable.

### IV.     **WITHDRAWAL OF CERTIFICATION REQUEST**

On August 26, 2008, this Court certified a question of Maryland law for decision by the Court of Appeals of Maryland, and the matter is currently pending under the caption *Yuri Torres Gonzales, et al. v. Prestige Maintenance USA, Inc. et al.*, Misc. No. 1, September Term 2008. On March 30, 2009, the Maryland Court of Appeals issued an order holding the matter in abeyance pending confirmation that this Court has approved the settlement and withdrawn the certification request. In order to relieve this Court of the burden of having to prepare a separate notice to the Maryland Court of Appeals, the parties have drafted the proposed Final Order to include a withdrawal of the certification request. The parties would be willing to file a copy of the Final Order, upon entry, with the Maryland Court of Appeals.

## V.     CONCLUSION

For the reasons set forth in the Joint Motion for Preliminary Approval of the Settlement Agreement filed on April 10, 2009, and for the additional reasons stated herein, the parties submit that the Settlement Agreement reflects a fair, reasonable, and adequate compromise of the Action in accordance with law, and is in the best interests of the parties and justice.

The parties request that this Court retain jurisdiction over the Action for the purpose of resolving any disputes regarding the interpretation of or compliance with the Settlement Agreement and the Final Order.

As evidenced by the signatures of the undersigned counsel, the parties stipulate that this lawsuit should be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(ii).

WHEREFORE, for the foregoing reasons, the parties hereby request that the Court enter the proposed Final Order submitted herewith.

Dated:  September 28, 2009

Respectfully submitted,

  /s/ Scot A. Hinshaw
Scot A. Hinshaw, Esq. (No. 14556)
Michael J. Mueller, Esq. (admitted pro hac vice)
Christopher E. Humber, Esq. (admitted pro hac vice)
HUNTON & WILLIAMS LLP
1900 K Street, N.W.
Washington, DC 20006
Tel: 202.955-1500
Fax:  202.778-7409
mmueller@hunton.com
chumber@hunton.com

      /s/
_____
(signed by C. Humber with permission of A. Feldman, Esq.)
Michael J. Snider, Esq.
Allan Feldman, Esq.
SNIDER & ASSOCIATES, LLC
104 Church Lane, Suite 201
Baltimore, MD 21209
mike@sniderlaw.com
allan@sniderlaw.com


      /s/
_____
(signed by C. Humber with permission of A. Akaras, Esq.)
Andreas N. Akaras, Esq.
THE AKARAS LAW OFFICES
4423 Lehigh Road, #308
College Park, MD 20740
akaras@akaraslaw.com


      /s/
_____
(signed by C. Humber with permission of P. DeCamp, Esq.)
John M. Remy, Esq.
Paul DeCamp, Esq.
Jacqueline C. Tully, Esq.
JACKSON LEWIS LLP
10701 Parkridge Blvd., Suite 300
Reston, VA  20191
remyj@jacksonlewis.com
decamp@jacksonlewis.com
tullyj@jacksonlewis.com